196

## CIRCUIT COURT OF LOUDOUN COUNTY

Northern Virginia
Community Hospital, L.L.C.,
d/b/a Broadlands Regional
Medical Center

v.

Robert B. Stroube,
State Health Commissioner,
The Health Systems Agency
of Northern Virginia, Inc.,
and Loudoun Hospital Center

October 3, 2003

Case No. CH-22865

BY JUDGE T. J. MARKOW

This case is before the court on appeal from a final decision by the State Health Commissioner on February 28, 2003. The Petitioner owns two hospitals in Northern Virginia, Northern Virginia Community Hospital and Dominion Hospital. On June 28, 2002, the Petitioner filed an application for a Certificate of Public Need, requesting that it be allowed to replace its two hospitals in Northern Virginia with Broadlands Regional Medical Center.

In October 2002, the Health Systems Agency of Northern Virginia recommended denial of the Petitioner's project to the State Health Commissioner. In November 2002, the Department of Health held an informal fact finding hearing, overseen by Douglas Harris, Adjudication Officer. Based upon Mr. Harris' recommendation, the State Health Commissioner denied the Petitioner's application for a Certificate of Public Need on February 28, 2003.

The Petitioner presents the following five assignments of error.

I. Does the Petitioner's project constitute the addition of acute care beds and, therefore, warrant evaluation under the Plan standard applicable to the need for new general medical/surgical beds at 12 Va. Admin. Code § 5-240-30(D)?

II. Did the Commissioner establish new regulatory standards without complying with applicable notice and comment procedures as required by the Virginia Administrative Process Act?

III. Were the Commissioner's Findings of Fact supported by substantial evidence in the Record?

IV. Did the Commissioner act arbitrarily and capriciously by ignoring substantially similar prior decisions without distinguishing them from the present case?

V. Did the Commissioner fail to observe required procedures in issuing his Case Decision?

## I. *Addition of Acute Care Beds*

The Petitioner argues that the Commissioner exceeded his statutory authority when classifying the Petitioner's project as an addition of acute care beds and reviewing its application based upon this conclusion. The court finds that the Commissioner did not act outside of his statutory authority and properly concluded that the Petitioner's project was an addition of acute care beds.

An agency determination is entitled to deference by an appellate court when there is a question of law "where the question involves an interpretation which is within the specialized competence of the agency and the agency has been entrusted with wide discretion by the General Assembly." *Johnston-Willis, Ltd. v. Kenley*, 6 Va. App. 231, 244, 369 S.E.2d 1, 8 (1988). An appellate court should only interfere with "the arbitrary or capricious action that constitutes a clear abuse of delegated discretion." *Id.* The Petitioner has not shown that the Commissioner's interpretation of the regulatory provisions in reference to the Petitioner's application was arbitrary or capricious or a clear abuse of his discretion.

The Petitioner states that the Broadlands facility would decrease the number of acute care beds in Loudoun County by 84 beds. The Petitioner's argument is based upon the fact that Northern Virginia Community Hospital currently has 164 licensed beds (144 of which are acute care beds and 20 of which are psychiatric beds) and Dominion Hospital has 100 licensed psychiatric beds. Therefore, the Petitioner currently holds a total of 264 beds in Northern Virginia. The Broadlands project would contain a total of 180 beds (120 of which would be acute care beds and 60 of which would be psychiatric beds). The Petitioner thereby argues that in closing 264 current beds there will be a reduction of 84 beds in Loudoun County. In addition, the Petitioner argues that there would be a decrease in the number of acute care-licensed beds in Loudoun County, from 164 to 120.

In support of its argument, the Petitioner quotes regulatory language defining "general medical/surgical beds" as "organized facilities and services (excluding those for newborns) *available* for the care and treatment of patients not requiring specialized services." 12 Va. Admin. Code § 5-240-10(1) (emphasis added). The court does not find that the Commissioner interpreted this regulatory provision arbitrarily and capriciously in determining that the Broadlands project increased the number of acute care beds. A reasonable interpretation of this definition would allow that all beds "available" to be used for those patients who do not require specialized services, such as psychiatric services, would be considered as general medical/surgical beds. Using this interpretation, the 60 psychiatric beds that would be created at the Broadlands project must be included within the number of general medical/surgical beds. The Adjudication Officer correctly pointed out that the proposed psychiatric beds could easily be converted to use as acute beds, and, therefore, he reasonably found them to be "available" beds that must be counted in the total number of licensed acute care beds. This interpretation is further supported by the fact that the 60 psychiatric beds at the Broadlands project would have to be dual-licensed as both acute care beds and psychiatric beds by the Department of Health and the Department of Mental Health, Mental Retardation, and Substance Abuse Services.

For the above reasons, this court finds that the Commissioner properly counted the number of acute care beds, concluding that the Broadlands project would result in an increase of 16 licensed acute care beds. This court cannot find that the Commissioner abused his discretion in interpreting the regulatory definition or applicable standards.

## II. *Establishment of a New Regulatory Standard*

The Petitioner argues that the Commissioner created new regulatory standards, without prior notice and comment rulemaking, in denying the Petitioner's application. In particular, the Petitioner argues that the Commissioner adopted a twenty-mile standard for looking at the impact a new hospital would have on existing hospitals, in contravention of the ten-mile standard, at 12 Va. Admin. Code § 5-240-50(A)(2), which had previously been set aside as outdated by the Commissioner in the St. Francis opinion issued on January 28, 2003. Additionally, the Petitioner argues that the Commissioner erred by adopting a cost standard which is dependent upon cost per bed instead of the regulatory cost per square foot standard located at 12 Va. Admin. Code § 5-240-50(B). The regulatory standards in question are mandated to be considered by the Commissioner under Va. Code § 32.1-102.3(B)(2): "The relationship of the project to the applicable health plans of the Board and the health planning agency." This statutory provision requires the Commissioner to consider whether the project complies with the State Medical Facilities Plan.

This court does not find that the Commissioner made a legal error in either circumstance. The Petitioner alleges that the Commissioner committed an error of law, within the special expertise of the Commissioner, in interpreting and applying these regulatory standards. In order for this court to reject the Commissioner's determination, as stated above, this court must find that the Commissioner acted arbitrarily and capriciously, clearly abusing his statutory and regulatory discretion.

The Petitioner claims that because the Commissioner looked at two area hospitals beyond the traditional ten-mile standard, the Commissioner imposed a new location standard. However, there is no evidence that the Commissioner intended to advance a new regulatory standard based upon a twenty-mile radius. The Petitioner claims that the Commissioner has adopted this standard based upon a variety of statements within the Adjudication Officer's report. In particular, the Petitioner cites to page 4, item 21, of the Adjudication Officer's report. However, while the Adjudication Officer does state that there are three acute care hospitals within twenty miles of the proposed Broadlands site, the Officer does nothing more than make a factual notation regarding the hospitals within the surrounding area of the proposed site. The Petitioner also cites to page 31 of the Adjudication Officer's report as further evidence that the Commissioner adopted a twenty-mile standard. Review of this portion of the Officer's report, however, makes it clear that the Adjudication Officer considered the three area hospitals in reference to the statutory factor at Va.

Code § 32.1-102.3(B)(9): "The relationship of the project to the existing health care system of the area in which the project is proposed." This section of the Code provides proper statutory authority for the Commissioner to consider any hospitals he reasonably considers to be within the "existing health care system of the area" of the proposed project. Therefore, the Commissioner did not act outside the scope of his statutory authority in considering those hospitals within twenty miles of the Broadlands site.

The Petitioner's Memorandum in Support of its Petition for Appeal also states that the Commissioner erred in establishing a requirement that "beneficial competition" be created by a hospital relocation. Citing to the Commissioner's letter dated February 28, 2003, the Petitioner notes that the Commissioner stated that, in order for a replacement project to be found reasonable, "the cost involved [should be] outweighed by some substantial benefit to the health system, *such as* the introduction of an element of beneficial competition" (emphasis added). This language does not amount to the adoption of a requirement that every replacement project spawn beneficial competition before its application may be granted. Instead, this statement reflects only that the Commissioner was attempting to delineate one possible way that a substantial benefit can outweigh the cost of replacement. The Petitioner's interpretation of the Commissioner's language is misplaced, and the plain language cannot reflect an intention to adopt a new regulatory requirement.

The Petitioner lastly argues that the Commissioner implemented a new regulatory standard by reviewing its application under the cost per bed standard. The State Medical Facilities Plan requires the Commissioner to review the cost of the proposed project based upon cost per square foot. The Adjudication Officer's Report, on page 15, properly indicates that he reviewed the cost of the Broadlands project per square foot, finding that "the direct construction cost, per gross square foot, of Broadlands is $229. This figure compares favorably with the average figure for several recently-approved projects across Virginia." The Petitioner, however, complains that the Adjudication Officer then proceeded to review its project on a cost per bed standard as well. The Adjudication Officer did, in fact, review the cost per bed of the Broadlands project and weigh this fact in his recommendation. However, this review did not amount to the adoption of a new regulatory scheme. While the Adjudication Officer notes that "this total capital cost is equivalent to over $1 million per proposed bed" on page 15 of his report, he continues to state that he has considered this fact "in relation to the sixteenth statutory consideration." The Commissioner is required to consider "the costs and benefits of the construction associated with the proposed project" by Va.

Code § 32.1-102.3(B)(16). It is within the statutory discretion of the Commissioner to consider the cost of construction on any basis that is not arbitrary and capricious. It is clear that the Commissioner considered the cost per bed of the Broadlands project under his statutory authority to do so, without imposing a new regulatory standard, as the Petitioner proposes.

Petitioner's argument regarding location and cost is, in effect, that the Commissioner committed an error of law in applying standards outside of the scope of the State Medical Facilities Plan. However, as noted in briefs by the Respondents, compliance with the State Medical Facilities Plan is only one of the statutory factors that the Commissioner must consider in determining whether to grant or deny an application for a Certificate of Need. The Commissioner may properly consider the factors at issue under Va. Code § 32.1-102.3(B)(9), (16). This court finds that the Commissioner did not abuse his discretion or act outside of his statutory or regulatory authority by considering those hospitals within twenty miles of the Broadlands site and the cost of the project per bed.

### III. Substantial Evidence and Findings of Fact

The Petitioner next argues that the Commissioner's findings of fact were not supported by the substantial evidence in the record. On questions of fact, an agency is entitled to deference so long as its determination is supported by the substantial evidence in the case. This court "may reject the agency's findings of fact only if, considering the record as a whole, a reasonable mind would necessarily come to a different conclusion." *Kenley* at 242, 369 S.E.2d at 7. This court does not find that a reasonable mind must necessarily come to a different conclusion after reviewing the record in this case. Therefore, this court finds that the Commissioner's findings of fact were supported by the substantial evidence in the record.

First, the Petitioner argues that the Commissioner ignored evidence that the population of Loudoun County is growing rapidly. However, the Adjudication Officer's report clearly indicates that the Officer considered the population growth occurring in Loudoun County, noting the varied projections regarding this growth. "From 1990 to 2000, the population of Loudoun County increased 96.9 percent to a total of 169,599. Projections for future growth vary. The Loudoun County Department of Economic Development predicts a 2011 population of 310,510, while Claritas, Inc., a national demographics company predicts a population that year of 249,653, and the Virginia Employment Commission predicts a population of 206,254." Adjudication Officer's Report 4-5.

Second, the Petitioner argues that the Commissioner ignored evidence in the record that Loudoun County has recently dealt with rerouting, high occupancy rates, and unavailability of acute care services. The Adjudication Officer's report clearly indicates that the Officer considered these issues in making his recommendation. On page 20 of his report, the Adjudication Officer notes that he believes that the opening of a full service emergency room at Loudoun Hospital's Leesburg facility "should readily accommodate medical emergencies in the county and stem the need for reroutes." Additionally, the Adjudication Officer noted on page 7 of his report that migration often occurs "regardless of local hospital capacity" and that "having two hospitals in an area does not result in a low outmigration for care."

Third, the Petitioner argues that the Commissioner ignored evidence in the record that Loudoun County residents could be served more conveniently if Broadlands was approved. The Adjudication Officer considered this fact, concluding that "focusing on the number of hospital beds within a particular county's borders, although easily grasped by the popular mind, to the exclusion of numerous other compelling, and legally controlling, considerations is an exercise in disproportionate emphasis and an abandonment of sound health planning principles." Adjudication Officer's Report 22.

Fourth, the Petitioner argues that the Commissioner failed to consider evidence in the record that Loudoun County "presented inconsistent and flawed analyses of its financial condition, utilization forecasts, and staffing needs." In support of its allegation, the Petitioner directs the court to two affidavits of John S. Madden, M.B.A., C.P.A. This court will not reverse the decision of an administrative agency solely because there is evidence in the record that conflicts with the decision made. Instead, the Petitioner bears the burden of proving to this court that the Commissioner failed to consider the substantial weight of the evidence. The Adjudication Officer considered evidence regarding the financial condition, utilization forecasts, and staffing needs of Loudoun Hospital. His report does not indicate that he ignored the evidence pointed to by the Petitioner, merely that he determined that the Broadlands project would have a "devastating effect" on Loudoun Hospital after consideration of all the evidence. Adjudication Officer's Report 24.

Fifth, the Petitioner complains that the Commissioner ignored substantial evidence regarding the needs for surge capacity in Loudoun County. However, the Adjudication Officer specifically noted that the Petitioner claimed that the Broadlands would "stand ready to respond to disaster." Adjudication Officer's Report 27. This comment indicates that the Adjudication Officer did not ignore the surge capacity argument presented by the Petitioner.

Sixth, the Petitioner argues that the Commissioner failed to consider substantial evidence regarding its charity care policy. In his recommendation, the Adjudication Officer specifically referred to the Petitioner's "recent decision to adopt a policy addressing [charity care]." Adjudication Officer's Report 17.

Seventh, the Petitioner claims that the Commissioner failed to acknowledge a preference for the project based upon financing from accumulated reserves. However, the Adjudication Officer clearly indicated that "the Broadlands proposal would be financed entirely from accumulated reserves. ... This financing scheme warrants a preference to the proposal, to whatever extent such a preference would be operative. . . ." Adjudication Officer's Report 16.

Eighth, the Petitioner argues that the Commissioner did not consider evidence regarding the Petitioner's proposals to staff the Broadlands project. In particular, the Petitioner directs the court to public hearing comments made by Maria Wedgewood, Human Resources Director. The Adjudication Officer's report, however, indicates that he did consider the comments of Ms. Wedgewood in noting that the Petitioner "proposes to [staff the Broadlands] through busing its current staff 25 miles from Arlington County ... and predicts that its existing staff would 'constitute the core employees at [the Broadlands]'." Adjudication Officer's Report 26.

Finally, the Petitioner complains that the Commissioner ignored overwhelming evidence of public support for its project. The Adjudication Officer reviewed the evidence of this public support, consisting mostly of letters from insurers, concluding "that the letters [] include statements based on superficial analysis." Adjudication Officer's Report 25.

Based upon the above references by the Adjudication Officer, this court cannot reasonably find that a reasonable mind must necessarily come to a different conclusion than that of the Commissioner. Instead, the evidence indicates that the Commissioner reviewed each of these pieces of evidence within the voluminous record, weighed it appropriately, and based his decision on the substantial weight of the evidence.

## IV. *Substantially Similar Prior Decisions*

The Petitioner also argues that the Commissioner committed an error of law by failing to treat similar cases in the same way. Particularly, the Petitioner alleges that its project is "substantially similar in pertinent respects to numerous off-site replacement hospital projects that have been approved by the Commissioner consistently over the last twenty-four years." However, the

Petitioner only points to one specific case that it claims is substantially similar. The Petitioner argues that the St. Francis decision issued by the Commissioner on January 28, 2003, one month before his decision in this case, is inconsistent with his decision in this case.

In order to prove that the Broadlands project should have been treated similarly to that of the St. Francis project, the Petitioner must prove that the Commissioner acted arbitrarily and capriciously in distinguishing the cases. The Petitioner points to three specific instances in which the Commissioner should have made a determination in accord with the one made in St. Francis.

First, the Petitioner argues that the Commissioner should have found the rate of population growth in Loudoun County to be significant. The Petitioner claims that the Commissioner found a 24% rate of population growth to be significant in his St. Francis decision (and also a 28.1% rate of population growth in the Williamsburg decision), while discounting that Loudoun County is the "fastest growing county in the Commonwealth."

Second, the Petitioner argues that the Commissioner should have found that the need for greater surge capacity in Northern Virginia validated the need for the Broadlands project. The Petitioner claims that, in the St. Francis decision, the Commissioner found that there was a need for surge capacity in Chesterfield County, while, in this case, ignoring that Loudoun County is "just minutes away from the nation's capital in an area that has already been affected directly by terrorism and bioterrorism."

Third, the Petitioner argues that the Commissioner should have found the letters of support and analysis from area insurance companies to show the need for the Broadlands project. The Petitioner claims that the Commissioner found letters of support from insurance companies of significance in the St. Francis case, while discounting the eight letters of support in this case as "superficial."

These are the only similarities proposed by the Petitioner between this case and the St. Francis decision. Reviewing these examples, this court cannot find that the cases were substantially similar such that the Commissioner is required to find the same way in each. There is no evidence that the Commissioner was arbitrary and capricious in applying his regulatory and statutory standards to the above three factors. In fact, the Adjudication Officer specifically notes in his report that population growth estimates vary and that, even with the population growth, the county "will have a surplus of 155 medical-surgical-pediatric beds and 169 intensive care (ICU) beds in 2007, based on the inventory of existing and approved beds. ... No numerical need for additional acute care beds exists in [Loudoun County]." Adjudication Officer's Report 19. Additionally, the Adjudication Officer found that

"consideration of payments made by private insurers is crucial to gauging the financial effect of a proposed project, and the opinions of insurers must be taken seriously. ... Analysis reveals that the letters from insurers include statements based on superficial analysis. ... Trigon's letter consists of one brief substantive paragraph and reveals no appreciation or understanding of the complexity involved. . . ." Adjudication Officer's Report 25.

The Commissioner clearly evaluated the three factors raised by the Petitioner. However, the Commissioner need not make the same decision in every case that presents itself to him in which there is population growth, there may be a need for surge capacity, and/or there are letters of support from insurers. Instead, the Commissioner may properly weigh these factors in determining whether there is a "public need" for the relocation of the beds at issue. The Petitioner has presented no evidence that the Commissioner failed to weigh these factors. Additionally, the Petitioner has failed to carry the burden of showing that this case and the St. Francis case are so strikingly and substantially similar as to require the same decisions.

## V. *Procedures*

The Petitioner has claimed that the public hearing and review process conducted by the Health Systems Agency of Northern Virginia was procedurally deficient. First, the Petitioner argues that the public hearing held on October 8, 2002, was improper because not all of its supporters were given time to speak. Second, the Petitioner argues that the procedures of the Health Systems Agency on and after its vote on October 14, 2002, to recommend denial of the Petitioner's application were improper, tainting the decision of the Commissioner.

This court does not find that the public hearing held on October 8, 2002, was improper. The Petitioner specifically argues that not enough time or space was allocated for the hearing. Evidence at the hearing on the Petition for Appeal showed that the hearing occurred in a high school auditorium. The Petitioner complains that only 31 of its 93 identified supporters were allowed to speak at the hearing. The Petitioner is not entitled to an unlimited amount of time or number of speakers in order to present its proposal to the Health Systems Agency. The fact that the Petitioner had 31 supporters speak at the hearing is evidence that its position and proposal were adequately presented.

This court does, however, find that the procedures regarding the Health Systems Agency on and after its vote on October 14, 2002, were defective. On October 14, the Health Systems Agency voted 13 to 4 (with 2 abstentions) to recommend denial of the Petitioner's project. There is no issue as to the

procedural propriety of the actual numerical count. However, the Petitioner argues that, upon voting, the Health Systems Agency failed to formally pass any resolution regarding its reasons for the recommendation of denial.

On October 17, 2002, Dean Montgomery, Executive Director for the Health Systems Agency, wrote a letter to the office of the Commissioner regarding the Health Systems Agency's reasons behind its recommendation. The letter lists twenty-one "basic findings" supporting its recommendation. John H. Rixse, Chairman of the Board of Directors for the Health Systems Agency, wrote a letter dated December 5, 2002, to the Adjudication Officer regarding the letter dated October 17. Specifically, Mr. Rixse stated that he "wanted to assure [the Commissioner] that the October 17 letter accurately conveys the position of the Board of Directors of the Health Systems Agency [], which was to recommend denial of the application." However, Mr. Rixse then writes that the October 17 letter "attempted to capture most of those concerns [voiced by the Board] []. It does not, nor was it intended to, suggest that any, or all, Board Members made their decision because they agreed with all of the findings noted in the letter." This letter, submitted after the deadline for document submission, clearly expresses that the reasons stated in the letter dated October 17 cannot and should not be taken as encompassing formal reasons behind the Health System Agency's recommendation. Without any formal resolution by the Health Systems Agency, neither the Commissioner nor this court can know the reasons behind the recommendation with which the required number of Board members agree.

The Commissioner is required under Va. Code § 32.1-102.3(B)(1) to consider "the recommendation and the reasons therefor of the appropriate health planning agency." However, there were never any reasons formally propounded by the Health Systems Agency upon which the Commissioner could properly rely. Additionally, the Commissioner improperly considered those reasons stated in the letter dated October 17, in that there is no evidence that they reflect the required consensus of the Health Systems Agency. For this reason, this court must remand this case to the Commissioner with instructions to remand the case to the Health Systems Agency for a formal recommendation and reasons in support therefor upon which the Commissioner may properly rely.